COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


JAMES WALTER McLELLAN
                                          OPINION BY
v.    Record No. 1956-99-4          JUDGE ROBERT P. FRANK
                                       SEPTEMBER 5, 2000
CLAUDIA MARIE McLELLAN


            FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                    John E. Wetsel, Jr., Judge

             Alexander R. Iden (Massie, Inger & Iden,
             P.C., on brief), for appellant.

             Nate L. Adams, III (Adams & Kellas, P.C., on
             brief), for appellee.


     James Walter McLellan (husband) appeals the chancellor's

denial of his motion to reinstate this matter on the court's

docket.  On appeal, he contends the chancellor erred in:  1)

refusing to vacate a provision of the 1995 divorce decree

awarding Claudia Marie McLellan (wife) a portion of husband's

military disability retirement pay pursuant to the terms of

their property settlement agreement and 2) denying his motion to

reinstate without hearing evidence.  We hold that the chancellor

did not err and affirm the judgment.

                        I.  BACKGROUND

     The parties were married on June 24, 1961, and separated on

November 1, 1993.  Husband was released from active duty with

the United States Marine Corps on May 31, 1978, by virtue of a

permanent physical disability and began receiving disability retirement pay in addition to regular retirement pay. Thus, when the September 28, 1995 property settlement agreement (agreement) was executed, husband was receiving the disability retirement pay.

Husband filed a bill of complaint for divorce in the Circuit Court of the City of Winchester on January 25, 1995, requesting a "no-fault" divorce and incorporation of the agreement into the final decree. Each party was represented by counsel during the negotiation and execution of the agreement.

The final decree was entered on October 18, 1995, and incorporated the agreement, specifically noting the military retirement pay:

> 2(A) <u>DIVISION OF HUSBAND'S MILITARY RETIREMENT PAY</u>. Pursuant to the aforementioned Separation and Custody Agreement, the parties have agreed to divide the Complainant's military retirement pay as a marital asset. The Wife will receive 42% of the Husband's retirement pay pursuant to the terms in the Separation and Custody Agreement.

Husband endorsed the final decree, "Seen and Agreed."

Paragraph 7 of the agreement, entitled "Military Retirement Pension and Benefits," provides as follows:

> (a) <u>Retirement Pay</u>: The Husband currently receives a monthly military retirement pay which the parties agree constitutes marital property under Virginia law, <u>Va. Code Ann.</u> § 20-107.2 [sic] (1950, as amended). The parties agree that the military retired pay shall be divided so

that the Wife receives 42% of the Husband's monthly retirement pay, plus such pro rata cost of living adjustments as may in the future be given under federal law.  Said percentage of the monthly payment currently totals $699.00.  Husband agrees to cause to be entered a Qualified Domestic Relations Order or equivalent whereby payments are made directly to the Wife at his expense. The Husband shall make all efforts to ensure such an Order is entered and accepted, by the pay authority within 60 days of the execution of this Agreement.  Until such time as an appropriate Order is entered and accepted, the Husband shall pay directly to Wife the sum representing her 42% interest plus any pro rata accrued cost of living adjustments.

Neither party submitted a qualified domestic relations order (QDRO) to the court for entry, and husband made direct payments to wife as set forth in the agreement.

On July 6, 1999, husband filed a motion to reinstate this cause on the docket of the Circuit Court of the City of Winchester.  In his motion, he requested that the trial court vacate the provision of the divorce decree awarding wife a portion of husband's military pay based on the trial court's original lack of subject matter jurisdiction.

Husband alleged in his motion that he had been released from active duty from the United States Marine Corps on May 31, 1978, by reason of permanent physical disability and that his retirement pay is permanent disability retirement pay.

On July 23, 1999, the trial court entered an order denying husband's motion.  In its order, the trial court opined,

"[W]hile the court cannot order the equitable distribution of [husband's military disability retirement] the parties could agree to it in a separation agreement as they did in this case."

## II.  ANALYSIS

Husband contends the trial court erred by refusing to grant his motion to vacate the provision of the parties' agreement awarding wife a share of his military disability retirement pay and by refusing to reinstate the matter without hearing evidence.

Husband correctly asserts that, under the provisions of the United States Code governing the computation of retired military pay, "disposable retired pay" does not include his disability retirement pay.  See 10 U.S.C.A. § 1408(a)(4)(C).  Husband contends that, under federal law, the trial court lacked subject matter jurisdiction to award wife a portion of his military disability retirement pay, despite the provisions of the parties' agreement.  We disagree.

### A.  Subject Matter Jurisdiction

The Supreme Court of Virginia has ruled that "subject matter jurisdiction is the authority granted to a court by constitution or by statute to adjudicate a class of cases or controversies."  Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999) (citations omitted).  Moreover, the parties cannot confer subject matter jurisdiction on the court

by agreement. See Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990) (citation omitted).

Code § 20-109.1 authorizes a trial court to affirm, ratify and incorporate by reference in its decree a property settlement agreement. See Code § 20-109.1. Code § 20-107.3 authorizes a trial court to determine and divide marital property, including retirement funds, and to make a monetary award. See Code § 20-107.3.

Furthermore, the relevant provisions of federal law do not divest the trial court of subject matter jurisdiction. For instance, under the relevant federal law, even an order that purports to award more than authorized by law "shall not be considered to be irregular on its face solely for that reason." 10 U.S.C.A. § 1408(e)(5).

In this case, the trial court clearly had subject matter jurisdiction over the parties' divorce and the equitable distribution of their marital property. Therefore, we find no error in the trial court's determination that it had subject matter jurisdiction.

## B. Disability Retirement Payments

Husband contends that federal law preempts state law in the area of federal military disability benefits and that the trial court had no power to order a division of husband's benefits, despite the provisions of the agreement. We disagree.

In Owen v. Owen, 14 Va. App. 623, 419 S.E.2d 267 (1992), we recited the historical evolution of this issue:

> [T]he Supreme Court held that federal law preempted state court division of military retirement pay. McCarty v. McCarty, 453 U.S. 210, 232, 101 S. Ct. 2728, 2741, 69 L.Ed.2d 589 (1981). In response to the McCarty decision, Congress passed the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (hereinafter "the Act"). In 1989, the Supreme Court interpreted the Act as granting state courts the power to divide military retirement pay, but specifically held that the Act does not grant state courts the power to divide military retirement pay that has been waived to receive veterans' disability benefits. Mansell v. Mansell, 490 U.S. 581, 594-95, 109 S. Ct. 2023, 2031, 104 L.Ed.2d 675 (1989).
> This Court applied the Mansell ruling in Lambert v. Lambert, 10 Va. App. 623, 395 S.E.2d 207 (1990), stating that "Mansell firmly established the principle that [the Act] preempts the application of state community property or equitable distribution laws to military retirement pay that is waived by a retiree in order to receive veterans' disability benefits." Id. at 627, 395 S.E.2d at 209. This Court went on to hold that "[w]hen military disability benefits are received in lieu of retirement pay, or veterans' disability benefits administered by the V.A. are received according to the required waiver of an equal amount of military retirement pay, the benefits are not subject to division by the state courts under the Act." Id.

Id. at 626, 419 S.E.2d 269.

Owen controls.[1]  In Owen, we addressed the narrow issue of whether the parties may use a property settlement agreement to guarantee a certain level of income by providing for alternative payments to the wife.  See id.  We answered in the affirmative, noting that "such an arrangement does not offend the federal prohibition against a direct assignment of military disability pay . . . ."  Id.

We wrote, "[F]ederal law does not prevent a husband and wife from entering into an agreement to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits."  Id. at 628, 419 S.E.2d at 270.

In numerous cases, we have distinguished between a direct assignment of benefits by the government and direct payment by the payee to the former spouse.  In Holmes v. Holmes, 7 Va. App. 472, 375 S.E.2d 387 (1988), we said:

> The judge did not specify that the
> payments had to come from the husband's
> excluded disability benefits.  Contrary to

---

[1] In Owen, the husband agreed to indemnify the wife if the husband took any action to defeat wife's right to share in the pension benefits.  See Owen, 14 Va. App. at 625, 419 S.E.2d at 268.  At the time the property settlement agreement was executed, the husband was not receiving any disability pay.  See id.  We held that the indemnity provision insured that the wife would receive a steady stream of money.  See id. at 627, 419 S.E.2d at 269.  The indemnity agreement did not specify a source of funds.  See id. at 627, 419 S.E.2d at 270.  We do not read Owen to require such an indemnity agreement as a requirement for such a ruling.  It is simply an evidentiary consideration to determine if the parties agreed to a certain level of income and not limit the source of the funds.

> the husband's contention, the source of the payments need not come from his exempt disability pay; the husband is free to satisfy his obligations to his former wife by using other available assets.

Id. at 485, 375 S.E.2d at 395.

In Cook v. Cook, 18 Va. App. 726, 446 S.E.2d 894 (1994), we wrote:

> While § 10 U.S.C. 1408(d)(2) prevents direct payment to the divorced wife, it was not error for the trial court to declare husband's military pension to be marital property and award wife seventeen percent of that pension upon his receipt of pension payments, notwithstanding that husband and wife were married for less than ten years.

Id. at 731, 446 S.E.2d at 896.

"Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987) (citation omitted). On appeal, when the sole issue is the meaning and effect of the terms of the contract, that issue "is a question of law which can readily be ascertained by this court." Id. (citation omitted).

"Because a separation agreement is a contract and must be construed as such . . . the intent of the parties as expressed in the contract controls. Where the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement." Gayler v. Gayler,

20 Va. App. 83, 86, 455 S.E.2d 278, 280 (1995) (citations omitted).

At the time the parties entered into their agreement, husband was already retired and receiving military disability retirement benefits. It is clear from the agreement that husband clearly intended for wife to receive forty-two percent of his entire retirement pay. The parties drew no distinction between disability and regular retirement pay. Further, the parties anticipated that a direct assignment might be problematic. While the husband agreed to submit a QDRO within sixty days for a direct assignment, the parties agreed to direct payment from husband to wife until the QDRO was entered and accepted. No such order was ever presented to the trial court for entry, and it appears both parties were comfortable with direct pay because husband never submitted the order and wife never sought such an order. In fact, husband made direct payments for over three years. We may infer that both parties were satisfied with husband receiving the retirement payments and then paying wife from whatever source he chose.

We, therefore, read paragraph 7(a) of the agreement to provide a set level of payments, the amount of which is determined by considering disability payments as well as husband's regular retirement payments. Therefore, we find no error in the trial court's denial of husband's motion to vacate.

## C.  Evidentiary Hearing

Husband contends the trial court erred by refusing to conduct an evidentiary hearing on his motion to vacate.  Whether husband's motion raised a question of fact that required the submission of evidence was a matter left to the discretion of the trial court.  We will not disturb the trial court's exercise of that discretion on appeal absence abuse.  See Rowe v. Rowe, 24 Va. App. 123, 144-45, 480 S.E.2d 760, 770 (1997).  The trial court ruled it could address husband's motion to vacate without the submission of additional evidence, based upon the provisions of the final decree of divorce and the parties' agreement incorporated therein.[2]  On review, we find that the trial court did not abuse its discretion in making such determination.

We, therefore, affirm the decision of the trial court.

Affirmed.

---

[2] On our review of the record, we see nothing that would indicate the taking of evidence was necessary to resolve the issue.  The agreement was unambiguous, and no parol evidence would be admissible.  See Renner Plumbing, Heating and Air Conditioning, Inc. v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983).