PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Mann, JJ., and Millette, S.J.

LEE ANN B. YOURKO

v. Record No. 220039

MICHAEL B. YOURKO

OPINION BY
JUSTICE CLEO E. POWELL
MARCH 30, 2023

FROM THE COURT OF APPEALS OF VIRGINIA

Lee Ann. B. Yourko ("Wife") appeals the decision of the Court of Appeals reversing the circuit court. Specifically, Wife takes issue with the Court of Appeals' determination that certain indemnification provisions in a property settlement agreement that she entered into with Michael B. Yourko ("Husband") violated federal law and, therefore, were void ab initio.

## I. BACKGROUND

As part of their divorce proceedings, Husband and Wife negotiated an agreement regarding the division of his military retirement pay. In conjunction with entry of the final divorce decree, the circuit court entered a Military Pension Division Order ("MPDO") which memorialized the parties agreement.[1] Under the terms of the MPDO, Wife was entitled to 30% of Husband's "disposable military retired pay."

---

[1] The MPDO is the equivalent of a property settlement agreement. *See* Code § 20-155 (permitting parties to "enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them" which does not otherwise have to be in writing, provided the terms of the agreement are "contained in a court order endorsed by counsel or the parties or . . . recorded and transcribed by a court reporter and affirmed by the parties on the record personally"). As the Court of Appeals has noted, property settlement agreements are a type of marital agreement which are "made in connection with the dissolution of a marriage or a separation." *Wills v. Wills*, 72 Va. App. 743, 759 (2021); *see also Plunkett v. Plunkett*, 271 Va. 162, 166 (2006) (implicitly equating marital agreements to property settlement agreements). Here, we note that there is language in the MPDO that clearly indicates that it is derived from an agreement between Husband and Wife regarding the division of Husband's military retirement pay. This is supported by the fact that Husband sought to challenge the MPDO based on his assertion that the parties had made a mutual mistake of fact in calculating the amount of his

Paragraph 9 of the MPDO states:

> The parties have agreed upon the level of payments to [Wife] to guarantee income to her, based upon military retired pay with a deduction for disability compensation, resulting in [Wife's] share equaling $1,202.70 per month. [Husband] guarantees the level agreed upon by the parties and agrees to indemnify and hold [Wife] harmless as to any breach hereof. Furthermore, if [Husband] takes any action, including additional waiver of retired pay for disability compensation which reduces the former spouse share she is entitled to receive, then he shall indemnify her by giving to her directly the amount by which her share or amount is reduced as additional property division payments which do not terminate upon her remarriage or cohabitation. [Husband] hereby consents to the payment of this amount from any periodic payments he received (such as wages or retired pay from any source) and this clause may be used to establish his consent (when this is necessary) for the entry of an order of garnishment, wage assignment, or income withholding.[2]

At some point after entry of the MPDO, the agency in charge of distributing military benefits, the Defense Finance Accounting Service ("DFAS"), computed Husband's disposable retired pay to be only $844 per month. Per DFAS, the remainder of his retirement benefits were considered to be disability pay, which is not divisible under federal law. As a result, DFAS calculated Wife's share of Husband's disposable military retirement pay to be only $253.20 per month rather than $1,202.70.

---

disposable retired pay, thereby indicating that the MPDO was the product of an agreement between the parties. Accordingly, for the purposes of this case, we will treat the MPDO as a property settlement agreement.

[2] Although the record indicates that Husband objected "to the provisions of paragraph nine (9)," the nature of his objection is unclear. Further, as neither party appealed the entry of the MPDO, its provisions became the law of the case. "'Under [the] law of the case doctrine, a legal decision made at one [stage] of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *Kondaurov v. Kerdasha*, 271 Va. 646, 658 (2006) (quoting *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 108 F.Supp.2d 549, 609 (W.D.Va.2000)) (modifications in original). Accordingly, any objection Husband may have raised regarding Paragraph 9 is deemed waived.

Husband subsequently moved to reinstate the parties' divorce proceedings to the circuit court's active docket pursuant to Code § 20-121.1. Once his motion was granted Husband moved to amend the final decree, the equitable distribution order and the MPDO. He argued that the parties had erred in their calculation of his disposable retired pay and, as a result, the MPDO required him to pay approximately 140% of his disposable retired pay. Husband further sought to have Paragraph 9 of the MPDO struck as void ab initio as the indemnification provisions were contrary to federal law. Specifically, he claimed that indemnification provisions would require him to pay more than 50% of his disposable retired pay in violation of federal law.

After considering the matter, the circuit court dismissed Husband's motion. The circuit court explained that it had no authority to amend the MPDO because more than 21 days had passed since the order was entered. The circuit court further stated that there were no clerical errors in the MPDO nor was there a mutual mistake of fact by the parties. Finally, the circuit court found that the MPDO "was an agreement" with regard to the amount Wife "was going to get from the military portion . . . and that there [were] provisions . . . in paragraph 9, as to how it would ensure that [Wife] get that amount."

Husband appealed to the Court of Appeals, arguing that the circuit court erred in ruling that it lacked the authority to amend the MPDO. In a published opinion, the Court of Appeals reversed the decision of the circuit court. *Yourko v. Yourko*, 74 Va. App. 80 (2021). The Court of Appeals agreed with the circuit court's determination that the MPDO was a final order, that it contained no clerical errors and that there was no mutual mistake of fact. *Id.* at 89-91. However, it went on to rule that federal law preempted Virginia law on questions involving the divisibility of military retirement benefits. *Id.* at 96. Relying on the United States Supreme Court's decision in *Howell v. Howell*, 581 U.S. 214 (2017), the Court of Appeals determined that,

3

"indemnification or reimbursement to compensate a former spouse for the waived military retirement pay was in violation of federal law."[3]  *Id.* at 94.  Although *Howell* only addressed situations where indemnification is ordered by a court, the Court of Appeals explained that the difference between court ordered indemnification and contractual indemnification was semantic in nature.  *Id.* at 96.  The Court of Appeals went on to hold that, because the indemnification provision was in violation of federal law, it was void ab initio and, therefore, it could "be attacked beyond twenty-one-days from judgment."  *Id.* at 97 (citing *Bonanno v. Quinn*, 299 Va. 722, 736-38 (2021)).

Wife appeals.

## II.  ANALYSIS

On appeal, Wife argues that the Court of Appeals erred in interpreting *Howell* to forbid courts from recognizing indemnification provisions related to military retirement pay in property settlement agreements.  Wife contends that the holding of *Howell* was limited to preventing courts from *requiring* indemnification.  She insists that *Howell* does not address whether spouses could voluntarily agree to indemnify a former spouse in the event military retirement pay is reduced.[4]  We agree.

---

[3] Additionally, the Court of Appeals overruled its decisions in *Owen v. Owen*, 14 Va. App. 623 (1992), and *McLellan v. McLellan*, 33 Va. App. 376 (2000), which permitted indemnification provisions in negotiated property settlement agreements to address the reduction in military disposable retired pay caused by the veteran waiving benefits in order to receive disability pay.

[4] At oral argument, Wife also argued that the doctrine of res judicata barred Husband from challenging the validity of the indemnification provision of the MPDO.  We note, however, that none of Wife's assignments of error raise the issue of res judicata as a basis for challenging the Court of Appeals' ruling.  As this Court has repeatedly admonished, we will only consider appellate arguments that are the subject of a proper assignment of error.  *See Wolfe v. Bd. of Zoning Appeals of Fairfax Cnty.*, 260 Va. 7, 14 (2000); *City of Winchester v. American*

4

The primary question raised in Wife's appeal is whether the United States Supreme Court's interpretation of the Uniformed Services Former Spouses' Protection Act ("USFSPA"), 10 U.S.C. § 1408, in *Howell* invalidates the indemnification provisions of an agreement between the parties. This question involves the interaction of federal statutes, Virginia statutes and United States Supreme Court jurisprudence. As such, this case presents a question of law which we review de novo. *See Maretta v. Hillman*, 283 Va. 34, 40 (2012).

In 1981, the United States Supreme Court ruled that Congress did not intend to allow courts to divide military retirement pay as part of judicially divisible property in a divorce proceeding. *McCarty v. McCarty*, 453 U.S. 210, 223 (1981) (observing that "the application of community property law conflicts with the federal military retirement scheme"). In reaching this conclusion, the United States Supreme Court noted that Congress treated military retirement pay differently from other federal retirement systems. *Id.* at 221. Moreover, it pointed out that Congress had referred to military retirement pay as "'a *personal entitlement* payable to the retired member himself as long as he lives.'" *Id.* at 224 (quoting S. Rep. No. 1480, 90th Cong., 2d Sess., 6 (1968)) (emphasis in original).

In response to *McCarty*, Congress enacted the USFSPA, which authorized courts to treat veterans' "disposable retired pay" as judicially divisible property in divorce proceedings. 10 U.S.C. § 1408. Under the USFSPA, "disposable retired pay" is defined as "the total monthly retired pay to which a member is entitled," less certain deductions. 10 U.S.C. § 1408(a)(4)(A). One such deduction occurs where military retirement pay has been waived in order to receive

*Woodmark Corp.*, 250 Va. 451, 460 (1995). Accordingly, we do not consider whether the doctrine of res judicata has any bearing on the present case.

veterans' disability payments. *Id.*[5] Thus, opting to receive disability payments would result in a reduction of the amount of disposable retired pay that may be divided between the parties.

In *Mansell v. Mansell*, 490 U.S. 581, 585 (1989), the United States Supreme Court addressed the effect that the USFSPA had upon its decision in *McCarty*. Its analysis began by noting that, because "the application of state community property law to military retirement pay" was "completely pre-empted" by pre-existing federal law, the USFSPA acted as "an affirmative grant of authority giving the States the power to treat military retirement pay as community property."[6] *Id.* at 588. However, it observed that the power granted by Congress was limited to only a portion of a veteran's military retirement pay. It specifically noted "that the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594-95. In other words, the USFSPA was only a partial rejection of *McCarty*; a veteran's disability benefits remained a personal entitlement.

Recognizing that the amount of disposable retired pay may be reduced by the actions of a veteran after a property division award was entered in a divorce proceeding, some courts opted to require that veterans reimburse or indemnify their former spouse if the veteran opted to waive military retirement pay for disability pay. *See, e.g.*, *In re Marriage of Howell*, 361 P.3d 936 (Ariz. 2015); *Glover v. Ranney*, 314 P.3d 535 (Alaska 2013); *Krapf v. Krapf*, 786 N.E.2d 318

---

[5] Veteran disability pay, unlike military retirement pay, is not taxed. 38 U.S.C. § 5301(a)(1). As such, many veterans choose to waive retirement pay in order to receive an equivalent amount of disability pay. *Howell*, 581 U.S. at 216.

[6] Although "community property" and "equitable distribution" refer to different methods of judicial property division in the context of divorce, the United States Supreme Court explicitly held that the USFSPA applies equally to both methods. *See Mansell*, 490 U.S. at 585 n.2 ("The language of the [USFSPA] covers both community property and equitable distribution States, as does our decision today.").

6

(Mass. 2003); *Johnson v. Johnson*, 37 S.W.3d 892 (Tenn. 2001). The United States Supreme Court rejected this approach, however, ruling that a state court could not "subsequently increase, pro rata, the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's waiver." *Howell*, 581 U.S. at 216. It explained that a court ordering a veteran to reimburse or indemnify their spouse for the reduction in disposable retired pay caused by waiver due to disability was no different than an order that divided the disability pay. *Id.* at 221.

> The difference is semantic and nothing more. The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property, i.e., to restore that portion of retirement pay lost due to the postdivorce waiver. And we note that here, the amount of indemnification mirrors the waived retirement pay, dollar for dollar. Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted.

*Id.* at 222.

It is important to note, however, that neither *Mansell* nor *Howell* involved a property settlement agreement that contained an indemnification provision. Moreover, neither opinion can be read as addressing the enforceability of such a provision. *Mansell* simply proscribes state courts from "treating military retirement pay that had been waived to receive disability benefits as community property." 490 U.S. at 586. *Howell*, on the other hand, only makes clear that state courts cannot *order* a veteran who elects to waive retirement pay for disability pay to indemnify a former spouse. 581 U.S. at 222. It is against this backdrop that we must analyze the facts of this case.

The record here establishes that the parties divided Husband's military retirement pay as part of a negotiated property settlement agreement, i.e., the MPDO. As a property settlement

7

agreement, the MPDO is a contract under Virginia law and must be treated accordingly. *See*

*Southerland v. Estate of Southerland*, 249 Va. 584, 588 (1995) ("Property settlement agreements

are contracts and are subject to the same rules of construction that apply to the interpretation of

contracts generally."). Therefore, it cannot be said that the circuit court erred by treating

Husband's disability pay as marital property for purposes of equitable distribution in violation of

*Mansell* because the present case is limited to the parties' contractual obligations under the

MPDO. *Howell* is similarly not implicated, as nothing in the record indicates that the *circuit*

*court* sought to "circumvent" the USFSPA by ordering that Husband indemnify Wife for the

reduction in disposable retired pay; rather, the indemnification provision was undisputedly part

of the MPDO.

Having established that neither *Mansell* nor *Howell* apply to the present case, the

remaining question is whether the USFSPA bars a former service member from dividing his or

her total military retirement pay via contract. As previously noted, Congress intended for

military retirement pay to be a personal entitlement of the veteran which could not be judicially

divided in the context of divorce. *McCarty*, 453 U.S. at 224. Though Congress reduced the

extent of this personal entitlement by enacting the USFSPA, it did not eliminate it entirely. *See*

*Mansell*, 490 U.S. at 592 (noting that Congress decided to "shelter from community property law

that portion of military retirement pay waived to receive veterans' disability payments").

Importantly, neither Congress nor the United States Supreme Court has ever placed any limits on

how a veteran can use this personal entitlement once it has been received. In other words,

federal law does not prohibit a veteran from using military disability pay in any manner he or she

sees fit, provided the money is paid directly to the veteran first; indeed, it expressly permits such

usage. *See, e.g.*, 38 U.S.C. 5301(a)(3)(B) (permitting a veteran to use disability benefits to repay loans, provided the payments are "separately and voluntarily executed by the [veteran]").

Moreover, the fact that the contract is between a husband and wife does not change the analysis. As at least one treatise on this subject matter has recognized:

> It's one thing to argue about a judge's power to require under principles of fairness and equity, a duty to indemnify; that approach has been eliminated by the *Howell* decision. It's another matter entirely to require a litigant to perform what he has promised in a contract.

2 Mark E. Sullivan, *The Military Divorce Handbook: A Practical Guide to Representing Military Personnel and Their Families* 691 (3d ed. 2019).

Indeed, this was the approach that the Court of Appeals adopted over 30 years ago. In *Owen v. Owen*, 14 Va. App. 623 (1992), a husband and wife entered into a property settlement agreement wherein the husband agreed to pay the wife "one-half of his Army gross retirement pay based on twenty-five years of Army service, subject only to any deductions for federal and state taxes required with respect to the Wife's share of said pension." *Id.* at 625. Like the present case, the husband also agreed to "take no action to defeat his wife's right to share in these benefits," and to "indemnify her for any breach by him in this regard." *Id.* As a result, it was determined that the wife was entitled to a portion of his pension totaling $1,241.47 per month. *Id.* After the husband retired, he was deemed to be 60% disabled as a result of service-connected injuries. *Id.* When he sought to reduce the amount of his payments to the wife, the trial court upheld the property settlement agreement and ordered the husband to pay the full amount. *Id.* On appeal, the Court of Appeals affirmed the trial court's decision, pointing out that the property settlement agreement did not assign the husband's military disability benefits to the wife, which would be a violation of the USFSPA. *Id.* at 626. "Rather, it insure[d] the wife a steady or possibly increasing monthly payment in return for her waiver of the right to receive

9

spousal support once the husband retired." *Id.* at 627. In so doing, the Court of Appeals implicitly recognized and upheld the parties' right to contract.

After determining that *Howell* barred servicemembers from making "contracts, 'guarantees,' or 'indemnification' promises to former spouses," the Court of Appeals expressly overruled *Owen* and its progeny. *Yourko*, 74 Va. App. at 96. This was error. As previously noted, *Howell* is not implicated when parties contractually agree to divide military retirement benefits and include an indemnification provision. For similar reasons, *Howell* is not implicated when a court seeks to enforce an otherwise valid indemnification provision. Rather, by the plain language of the opinion, *Howell* is only implicated when a *court* seeks to circumvent the USFSPA by ordering indemnification.

It is further worth noting that, contrary to the Court of Appeals' ruling, nothing in the MPDO specifies that Wife must be indemnified from Husband's military disability pay. The MPDO only requires that Husband "indemnify [Wife] by giving to her directly the amount by which her share or amount is reduced as additional property division payments which do not terminate upon her remarriage or cohabitation." By its plain language, the MPDO specifies that the indemnification is a *direct* payment from Husband to Wife. With regard to the source of funds, the MPDO is silent, stating only that Husband "hereby consents to the payment of this amount from any periodic payments he received (such as wages or retired pay from any source)." The record clearly indicates that Husband's income far exceeds the amount necessary to indemnify Wife even if the totality of his military retirement pay is excluded.[7]  Therefore, the

---

[7] According to the Final Decree, Husband's gross monthly income was $10,266.00. Excluding his military retirement benefits ($4,009.00), this leaves $6,257.00 that Husband could use to indemnify Wife. As the indemnification amount is $949.50, it is clear that Husband could indemnify Wife without using any of his military retirement pay, much less his disability pay.

10

MPDO cannot be interpreted as requiring Husband to use any of his military disability pay to indemnify Wife. On this record, any assertion to the contrary is entirely speculative, as the MPDO does not dictate the source of the indemnification payments. As such, Husband "'is free to satisfy his obligations to his former wife by using other available assets.'" *Owen*, 14 Va. App. at 627 (quoting *Holmes v. Holmes*, 7 Va. App. 472, 485 (1988)).

For these reasons, we expressly adopt the holding of the Court of Appeals in *Owen* that, with regard to the division of military retirement benefits, "federal law does not prevent a husband and wife from entering into an agreement to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits." 14 Va. App. at 628.[8] Along these same lines, federal law does not bar courts from upholding such agreements or from enforcing indemnification provisions that may be included to ensure that payments are maintained as intended by the parties.

### III. CONCLUSION

For the foregoing reasons, we will reverse the decision of the Court of Appeals and reinstate the circuit court's decision dismissing Husband's motion to amend.

*Reversed and final judgment.*

---

[8] In reaching this conclusion, we join a growing number of states holding that "*Howell* does not preclude one spouse from agreeing to indemnify the other as part of a negotiated property settlement." *Jones v. Jones*, 505 P.3d 224, 230 (Alaska 2022). *See also Martin v. Martin*, 520 P.3d 813, 819 (Nev. 2022); *In re Marriage of Weiser*, 475 P.3d 237, 249 (Wash. Ct. App. 2020).